UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| MARIA NAVARRO,<br><br>*Plaintiff*,<br><br>v.<br><br>NEWLEAF HOMES, LLC,<br>CENTER POINT REALTY COMPANY,<br>AND FRED GHAVIDEL<br><br>*Defendants*. | Civil Action No. SA:23-CV-00292-XR<br><br>Consolidated with: SA:23-CV-00293-XR,<br>SA:23-CV-00477-XR |

**PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

TO THE HONORABLE XAVIER RODRIGUEZ:

Plaintiff Maria Navarro seeks Partial Summary Judgement on her breach of contract claims against Defendants NewLeaf Homes, LLC ("NewLeaf Homes") and Center Point Realty Company ("Center Point") (collectively, "Entity Defendants") and will respectfully show that she is entitled to recover her unpaid commissions as a matter of law.[1]

### I.    SUMMARY OF ARGUMENT

Navarro entered into contracts with both NewLeaf Homes and Center Point that entitled her to receive commissions on sales of real property if she secured a contract for sale that ultimately closed. Entity Defendants terminated Navarro's employment with them. While Navarro believes that her layoff was discriminatory, it is undisputed that it was not for cause. Entity Defendants claimed that

---

[1] Plaintiff only seeks summary judgment on her outstanding breach of contract claim at this time as there are no relevant disputed facts, and she is entitled to judgment as a matter of law. Plaintiff recognizes that there are material fact questions that prevent entry of summary judgment on her remaining causes of action against Defendants.

purported business slow-downs associated with the global Covid-19 pandemic required them to lay off the majority of their salesforce, including Navarro.

After laying Navarro off, Entity Defendants refused to pay her the earned commissions that she had secured while in their employment. Entity Defendants instead either kept the commissions or paid them to individuals who did not perform the necessary tasks to earn them. Navarro maintains that Entity Defendants breached the contract between them by not paying the earned commissions because she satisfied all contractual requirements to earn the commission during her employment, the with the only outstanding task being payment—a duty that was Entity Defendants', not Navarros. Alternatively, to the extent Entity Defendants maintain that Navarro either did not complete all contractual obligations to earn her commissions, the contract is ambiguous and Navarro is entitled to recover those commissions as a matter of law pursuant to the procuring cause doctrine.

Summary judgment is appropriate on Navarro's contractual claims because there are no genuine questions of material fact to be answered by the jury. The *only* evidence before the Court clearly shows that Plaintiff satisfied the contractual requirements to be entitled to a commission. However, if the Court understandably feels that the contract is ambiguous as to what is required, then Navarro still prevails as the procuring cause doctrine would control—and it requires that Navarro be paid.

## II. RELEVANT FACTUAL SUMMARY

### A. NewLeaf Homes

NewLeaf Homes is a builder and residential community and land developer that constructs and sells new houses within its various residential communities/subdivisions. *See* Plaintiff's Original Petition, ECF No. 1-2, ¶19; Defendants' Answer, ECF No. 14, ¶19. NewLeaf Homes employed Sales Agents—like Navarro—to "sell, monitor, and service [ ] new home sale[s]" in their assigned NewLeaf Homes community/subdivision. *See* ECF No. 1-2, ¶ 20; *see also* NewLeaf Homes Agreement, attached

as Exhibit 1, at p. 1, ¶ 2. NewLeave Homes employed Navarro for almost five (5) years, from September of 2016 until March 25, 2021. *See* ECF No. 1-2, ¶ 21; ECF No. 14, ¶ 21.

At the outset of her employment with NewLeaf Homes, Navarro entered into a written agreement with it to perform home sales duties and earn commissions for homes sold during her tenure. *See* Exhibit 1. NewLeaf Homes only paid Navarro a commission—she did not receive hourly wages or any other form of compensation for the work she performed. *See* ECF No. 1-2, ¶ 24; ECF No. 14, ¶ 24. Under the terms of the Agreement, NewLeaf Homes agreed to compensate Navarro commissions that were based on a specified percentage of the NewLeaf Homes home sale price, initially ranging between 1.25% and 2.75%. *See* ECF No. 1-2, ¶ 24; Exhibit 1, at p. 2, § 3.a; *see also* Exhibit 2 (later providing for a flat 2% commission).

Section 4 of the Agreement outlined duties and responsibilities that Navarro was tasked to complete to earn commissions under the Agreement. Those tasks included: (1) initiating sales, (2) obtaining ratified purchase agreements, (3) obtaining earnest money deposits, (4) communicating with relevant parties, (5) ensuring the completion of required contract documentation; and (6) complying with NewLeaf Homes' policies and procedures. ECF No. 1-2, ¶ 26; Exhibit 1, at p. 2, § 4. Importantly, the Agreement does **not** condition Plaintiff's right to commissions upon her continued employment nor does it state that commissions on sales she procured during her employment but that closed after her termination are automatically forfeited upon her termination. *See* ECF No. 1-2, ¶ 27; Exhibit 1. In fact, nowhere does the relevant contractual document state sales Navarro procured during her employment will be canceled of forfeited upon her termination. *See generally* Exhibit 1.

Section 8 of the Agreement enumerated specific and limited circumstances under which NewLeaf Home *could* withhold commissions post-termination, specifically: (a) fraud or intentional misconduct, (b) felony conviction, or (c) willful refusal to perform assigned duties. *See* Exhibit 1, at p. 3, § 8. White it is undisputed NewLeaf Homes terminated Navarro, it is *also* undisputed that NewLeaf

Homes did **_not_** terminate Navarro for cause—there were no claims that she committed fraud or engaged in intentional misconduct; that she was convicted of a felony, or that she engaged in a willful refusal to perform assigned duties. *Id.*

Despite being subject to a layoff, NewLeaf Homes improperly withheld Navarro's earned commissions. Prior to her termination, Navarro fulfilled all contractual obligations under the Agreement and is entitled to payment of her commissions on sales she procured during her employment. *See* Declaration of Maria Navarro, attached as Exhibit 17, ¶¶ 10–12; *see also* Plaintiff's executed Purchase Agreements attached as Exhibit 5-1 through 5-21; Earnest Money Deposits, Exhibit 5-1, at NAVARRO_000590; Exhibit 6-1, Exhibit 5-3, at NAVARRO_000132-NAVARRO_000133, Exhibit 6-4, Exhibit 6-5, Exhibit 6-6, Exhibit 5-7, at NAVARRO_000183-NAVARRO_000184, Exhibit 6-8, Exhibit 6-9, Exhibit 5-10, at NAVARRO_000211, Exhibit 5-11, at NAVARRO_000321, Exhibit 5-12, at NAVARRO_000457, Exhibit 6-13, Exhibit 6-14, Exhibit 5-15, at NAVARRO_000350, Exhibit 5-16, at NAVARRO_000068, Exhibit 5-17, at NAVARRO_000293, Exhibit 6-18, Exhibit 5-19, at NAVARRO_000375, Exhibit 6-20, Exhibit 6-21; Closing Documents, attached as Exhibits 7-1 through 7-21; NewLeaf Homes "Cost Fee" Sheets, attached as Exhibits 8-1 through 8-21[2]; Deposition Transcript of NewLeaf Homes' Corporate Representative, attached as Exhibit 13, at 106:1-5, 106:14-17, 106:18-24, 111:17-112:2, 112:3-9, 112:10-14, 133:10-12, 140:22-141:1. 141:2-4, 142:4-7; Deposition Transcript of Fred Ghavidel (Navarro), attached as Exhibit 14, at 167:20-25.

Plaintiff initiated and obtained executed purchase agreements for numerous NewLeaf Homes properties during her employment for which she did not receive payment after her termination. For each of these transactions, identified in Attachments A and B, the same buyers Plaintiff procured

---

[2] Please note that any exhibit without a Bates Number was produced by Defendants in that manner.

purchase agreements for ultimately closed on these homes, demonstrating that Plaintiff performed fully under the terms of the Agreement and was the procuring cause of sale. Defendants' Spreadsheet, NLH'S-FG-CPR- 004427, attached hereto as Exhibit 4.[3] Navarro initiated these sales, procured the buyers, obtained executed purchase agreements, secured earnest money deposits, communicated effectively with buyers and other relevant parties, and completed all documentation and responsibilities to earn commissions. *See* Exhibit 17, ¶¶ 1–12. NewLeaf Homes simply refused to pay the earned commissions because Navarro was not employed with the sales funded. *See* Deposition Transcript of NewLeaf Homes' Corporate Representative (Navarro), attached as Exhibit 13, at 114:1-5; 127:7-11.

This withholding is not supported by the Agreement between the Parties as NewLeaf Homes did not (and does not) claim that it was withheld commissions based on any conditions enumerated in Section 8. *See* Exhibit 13, at 127:7-11. Nor does (or can) NewLeaf Homes identify *any* contractually obligated task Navarro failed to complete. *See* Exhibit 13, at 123:25-124:3 ("There's no handout that we hand out that says we got to do this, this, and this."), 131:15-18, 134:19-23, 140:22-141:1. 141:2-4, 156:10-17, 157:10-14; Deposition Transcript of Fred Ghavidel (Navarro), attached as Exhibit 14, at 125:24-126:4, 126:12-18, 127:8-15, 178:6-25, 179:13-15, 183:12-18, 185:12-20; Deposition Transcript of NewLeaf Homes' Corporate Representative (Rhoder), attached as Exhibit 15, at 128:8-12.

---

[3] Defendants created and produced a spreadsheet in discovery, NLH'S-FG-CPR- 004427, identifying "yellow" properties where Navarro procured the buyer and executed the purchase agreement and the same buyer ultimately closed on the property. *See* Exhibit 13, at 106:1-5, 106:14-17, 106:18-24, 111:17-112:2, 112:3-9, 112:10-14, 133:10-12, 142:4-7; Exhibit 14, at 75:5-10. These undisputed "yellow" properties are identified in Attachment A. For each property identified on Attachment A, and identified as "yellow" properties on Defendants' spreadsheet, it is undisputed that Navarro completed the contractual obligations necessary to qualify for commission payments, including initiating the sale, procuring the buyer, and obtaining ratified purchase agreements. These facts are confirmed through deposition testimony, executed purchase agreements, and Defendants' own documentation and summary of documentation. *See also generally* Exhibit 17. Defendants also improperly excluded several properties from the "yellow" classification despite satisfy the same criteria Defendants applied to other "yellow" properties. These properties are identified in Attachment B. Specifically, for these properties, like the "yellow" properties identified in Attachment A, Plaintiff procured the buyer, obtained the executed purchase agreements, secured earnest money deposits, and conducted communications and documentation pursuant to the NewLeaf Homes Agreement. These transactions meet the same criteria used by Defendants to designate "yellow" properties, yet were excluded from that classification on their summary spreadsheet. *See also generally* Exhibit 17.

Instead, the deposition testimony confirms that other positions handle communications regarding closing and other matters and that it's a "team effort" rather than one person's sole responsibility to complete all communications through closing. *See* Exhibit 13, at 86:10-20; Exhibit 14, at 126:23-127:7, 167:20-25; Deposition Transcript of NewLeaf Homes' Corporate Representative (Brown), attached as Exhibit 16, at 173:19-25. NewLeaf Homes recognizes, as it must, that all required contract documentation is completed with the purchase agreement. *See* Exhibit 15, at 128:13-16. Although Navarro fulfilled all obligations required to earn a commission under the Agreement, NewLeaf Homes denied payment.

Navarro is therefore entitled to unpaid commissions totaling approximately $202,268.12 for sales she procured. *See generally* Exhibits 1-12.

**B. Center Point Realty Company**

Center Point Realty is a real estate brokerage that holds a "Real Estate LLC" license with Texas Real Estate Commission ("TREC"). *See* ECF No. 14, ¶ 82. On or about April 21, 2017, Navarro entered into Center Point Realty – Independent Contractor Compensation Agreement for Licensed Agents ("Center Point Agreement") with Defendant Center Point. *See* ECF No. 14, ¶ 85; Center Point Realty – Independent Contractor Compensation Agreement for Licensed Agents ("Center Point Agreement"), attached hereto as Exhibit 18.

The Center Point Agreement entitled Navarro to receive 100% of the commissions on sales involving NewLeaf Homes buyers, minus a $199 transaction fee, and 80% of the commissions for sales not involving NewLeaf Homes buyers or outside of NewLeaf Homes, subject to certain listing limitations per calendar year. *See* Exhibit 18, at ¶ 3 (a)-(d). Navarro identifies the specific transactions for which she earned commissions under the Center Point Agreement but was either underpaid or not paid at all. *See* Exhibit 17, ¶¶ 15-29. These include transactions where Plaintiff was entitled to 100% of the commission (minus a transaction fee) on sales involving NewLeaf Homes buyers, and

80% commissions on sales outside of NewLeaf Homes.

Navarro therefore asserts she is owed approximately $30,003.16 in unpaid and/or underpaid commissions by Center Point. *See* Exhibit 17.

### III.   LEGAL STANDARD

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). When "the movant bears the burden of proof on an issue . . . [it] must establish beyond peradventure all of the essential elements of the claim or defense to warrant judgment in his favor." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986). "Once the movant does so, the burden shifts to the nonmovant to establish an issue of fact that warrants trial." *Smith v. Reg'l Transit Auth.*, 827 F.3d 412, 420 n.4 (5th Cir. 2016).

In evaluating a motion under Rule 56, the Court must determine whether, after considering the evidence in the light most favorable to the nonmoving party, a rational jury could find in favor of that party. *Scott v. Harris*, 550 U.S. 372, 380 (2007) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986)). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). "[T]he substantive law will identify which facts are material." *Id.* at 248.

### IV.   ARGUMENT

Under Texas law, the essential elements of a breach-of-contract claim are: "(1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of contract by the defendant; and (4) damages sustained by the plaintiff as a result of the breach." *Pickle v. Universal Cable Holdings, Inc.*, 534 F. Supp. 3d 663, 672 (N.D. Tex. 2021) (quoting *Smith Int'l, Inc. v. Egle Grp.,*

*LLC*, 490 F.3d 380, 387 (5th Cir. 2007) (quoting *Valero Mktg. & Supply Co. v. Kalama Int'l, L.L.C.*, 51 S.W.3d 345, 351 (Tex. App.—Houston [1st Dist.] 2001, no pet.)).

"Whether a party has breached a contract is a question of law for the court[,]" not a question of fact for the jury. *Id.* (quoting *X Technologies, Inc. v. Marvin Test Sys., Inc.*, 719 F.3d 406, 413 (5th Cir. 2013) (quoting *Meek v. Bishop Peterson & Sharp, P.C.*, 919 S.W.2d 805, 808 (Tex. App.—Houston [14th Dist.] 1996, writ denied)). "The court determines what conduct is required by the parties, and to the extent the parties dispute whether or not they have performed that conduct, the court submits that factual dispute to the jury." *X Technologies, Inc.*, at 413–14 (internal quotations omitted). When facts are undisputed or conclusively established, there is no need to submit these issues to a jury. *Id.*

Here, there is no dispute that Navarro entered into valid contracts with both Entity Defendants. It is also not disputed that Navarro procured sales contracts between prospective buyers and Entity Defendants—sales contracts that ultimately closed and funded but for which she did not receive a commission. The only issue that *is* disputed is whether Navarro was entitled to receive her commission after the sales funded despite having been terminated by Entity Defendants. Navarro maintains that there is no genuine legal or factual dispute on this point. Under the terms of the contract, and as supported by long-standing Texas jurisprudence—Navarro is entitled to be paid the commissions she earned under the procuring-cause doctrine.

### A. Procuring-Cause Doctrine Requires Entity Defendants to Pay Navarro Her Earned Commissions.

Texas jurisprudence is clear, in the absence of contractual provisions to the contrary, an employee is entitled to a commission once they supply a purchaser who is "ready, able, and willing" to buy the property according to agreed contractual terms. *Perthuis v. Baylor Miraca Genetics Lab'ys, LLC*, 645 S.W.3d 228, 231 (Tex. 2022). The Texas Supreme Court recently addressed the procuring-sales doctrine, and held:

> [w]hen a seller agrees to pay sales commissions to a broker (or other agent), the parties are free to condition the obligation to pay commissions however they like. But if their contract says nothing more than that commissions will be paid for sales, Texas contract law applies a default rule called the "procuring-cause doctrine." Under that rule, the broker is entitled to a commission when "a purchaser [was] produced through [the broker's] efforts, ready, able and willing to buy the property upon the contracted terms . . . ." *Goodwin v. Gunter*, 109 Tex. 56 (1916). In this case, the agreement between the parties was silent about any exceptions to the duty to pay commissions for sales that petitioner procured. The procuring-cause doctrine therefore applies.

*Id.* Of course, the procuring-cause doctrine is the default rule when the contract does not specifically address the payment of commissions after termination. *Id.* A contract *could* include terms making the payment of the commission contingent upon continued employment. *Id.* Neither Agreement at issue (NewLeaf Homes' or Center Point's) did.[4] *See* Exhibit 1; Exhibit 18. Because both Agreements are silent as to whether commissions are payable after an employee is laid off, the procuring-cause doctrine required Entity Defendants to pay Navarro the commissions she earned during the course of her employment with them.

### B. Navarro Satisfied All Contractual Requirements Set Forth in Section 4

Alternatively, should Entity Defendants argue that Section 4 set conditions on the payment of commissions under the Agreement, Navarro asserts that she has conclusively established that she satisfied all contractual requirements, and has thus shown her entitlement to the commissions as a matter of law. *See* Exhibit 1, §§ 3–4. While Section 4 is silent as to termination, it does set forth a short list of requirements its agents must satisfy to earn their commissions. Specifically, it requires:

---

[4] Commissions were only forfeited upon termination in the event of a termination for-cause, if one of the qualifying categories of behavior occurred. *See* Exhibit 1, Section 8; Exhibit 18. Again, Navarro was not terminated for cause.

> 4. **Criteria for Salespersons to Earn Commissions.** Salesperson acknowledges and agrees that any commission to be credited under this Agreement must be earned by him or her by accomplishing the following criteria with regard to each sale:
>
>    a. The sale must be initiated by the Salesperson or salesperson's partner when working in multi-salesperson communities in which commissions are shared.
>
>    b. A contract between Newleaf Homes and the purchaser(s) must be obtained and the purchase agreement form must be ratified by an authorized officer of Newleaf Homes.
>
>    c. An earnest money deposit in an amount and form acceptable to Newleaf Homes must be obtained at the time the purchase agreement is executed by the purchaser(s).
>
>    d. The salesperson must conduct all required communications with the: purchaser(s), construction department, lender, realtor(s), Newleaf Homes personnel, and any other applicable person and/or entity in an appropriate and effective manner so as to coordinate the efforts of all in accomplishing a timely and successful closing on the sale.
>
>    e. The salesperson must assist in ensuring the completion of all required contract documentation.
>
>    f. The actions and conduct of the salesperson must be consistent with the policies and procedures of Newleaf Homes

*Id.* at § 4. Here, Navarro has consistently testified that she completed each of the requirements set forth above for the sales identified in her attached declaration (and identified in Entity Defendants' own spreadsheet). *See* Exhibit 4; Exhibit 17. She further testified that, for the properties identified, she did the same work to generate and support the sale as she did for other properties for which she received a commission when she was employed. *See* Exhibit 17, ¶¶ 10–12. Entity Defendants, through their own testimony, could not identify any action Navarro *failed* to take. *See* Exhibit 13, at 123:25-124:3 ("There's no handout that we hand out that says we got to do this, this, and this."), 131:15-18, 134:19-23, 140:22-141:1. 141:2-4, 156:10-17, 157:10-14; Exhibit 14, at 125:24-126:4, 126:12-18, 127:8-15, 178:6-25, 179:13-15, 183:12-18, 185:12-20; Exhibit 15, at 128:8-12. Instead, Entity Defendants relied on the fact that Navarro was not employed when the sales funded to withhold her earned commissions. *Perthuis*, 645 S.W.3d at 23. This illegal action constitutes a breach of contract as a matter of law—Entity Defendants' failure to pay Navarro the commissions she earned that funded after her termination is in violation of the Agreement(s) and runs afoul of well-settled Texas jurisprudence. *See*

## V.    CONCLUSION

Because Navarro has conclusively established that—pursuant to the unambiguous contract between the Parties—she is entitled to the commissions she earned for purchasers she brought to the table. This question can be decided as a matter of law based on the clear text of the Agreement(s) and the undisputed testimony. As such, summary judgment is proper on Navarro's breach of contract claim.