IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| MARIA NAVARRO, | § | |
| | § | |
| *Plaintiff,* | § | SA-23-CV-00292-XR |
| | § | |
| vs. | § | |
| | § | |
| NEW LEAF HOMES, LLC,  CENTER POINT REALTY COMPANY, FRED GHAVIDEL, | § | |
| | § | |
| | § | |
| *Defendants.* | § | |

| | | |
|---|---|---|
| HOWARD RHODER | § | |
| | § | |
| *Plaintiff,* | § | SA-23-CV-00293-XR |
| | § | |
| vs. | § | |
| | § | |
| NEW LEAF HOMES, LLC,  FRED GHAVIDEL, | § | |
| | § | |
| *Defendants.* | § | |

| | | |
|---|---|---|
| DONALD BROWN, | § | |
| | § | |
| *Plaintiff,* | § | SA-23-CV-00477-XR |
| | § | |
| vs. | § | |
| | § | |
| NEW LEAF HOMES, LLC,  FRED GHAVIDEL, | § | |
| | § | |
| *Defendants.* | § | |

**REPORT AND RECOMMENDATION OF U.S. MAGISTRATE JUDGE
REGARDING DEFENDANTS FRED GHAVIDEL AND CENTER POINT REALTY'S
MOTIONS FOR SUMMARY JUDGMENT ON BREACH-OF-CONTRACT CLAIMS &
FLSA EXEMPTION AND PLAINTIFF MARIA NAVARRO'S CROSS MOTION FOR
PARTIAL SUMMARY JUDGMENT AGAINST CENTER POINT REALTY**

1

**To the Honorable United States District Judge Xavier Rodriguez:**

This Report and Recommendation concerns the following motions for summary judgment filed by Plaintiff Maria Navarro and Defendants Fred Ghavidel and Center Point Realty: Defendant Fred Ghavidel's Motion for Summary Judgment [#62] in Civil Action No. 5:23-cv-00292-XR ("the '292 case"); Defendant Center Point Realty's Motion for Summary Judgment [#67] in the '292 case; Plaintiff Maria Navarro's Motion for Partial Summary Judgment [#74] in the '292 case; Defendant Fred Ghavidel's Motion for Summary Judgment [#48] in Civil Action No. 5:23-cv-00293-XR ("the '293 case"); Defendant Fred Ghavidel's Motion for Summary Judgment [#40] in Civil Action No. 5:23-cv-00477-XR ("the '477 case").

All pretrial matters in the consolidated cases have been referred to the undersigned for disposition pursuant to Western District of Texas Local Rule CV-72 and Appendix C. The undersigned therefore has authority to enter this recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). For the reasons set forth below, it is recommended that Defendant Fred Ghavidel's motions for summary judgment be granted as to Plaintiffs' claims for breach of contract but denied as to Plaintiffs' claims under the FLSA. It is further recommended that Defendant Center Point Realty's motion for summary judgment as to Navarro's claim for breach of contract be granted, and Plaintiff Maria Navarro's motion for partial summary judgment against Defendant Center Point Realty as to her claim of breach of contract be denied.

## I.  Background

Plaintiffs Maria Navarro, Howard Rhoder, and Donald Brown each filed a separate cause of action in state court against their former employer, Defendant NewLeaf Homes, LLC ("NewLeaf"), a builder and residential community developer, and its owner, Fred Ghavidel. Navarro's suit also names a third defendant, Center Point Realty Company ("Center Point"). All

three Plaintiffs were sales agents assigned to sell, monitor, and service new home sales in an assigned NewLeaf community subdivision.  All three Plaintiffs contend that Defendants misclassified them as independent contractors, failed to pay them earned commissions, and discriminated against them based on various protected characteristics.  The claims asserted in the three lawsuits are breach of contract, violations of the Fair Labor Standards Act ("FLSA"), and discrimination in violation of 42 U.S.C. § 1981, the Age Discrimination in Employment Act ("ADEA"), Title VII of the Civil Rights Act of 1964 ("Title VII"), and the Texas Labor Code.[1]

The District Court consolidated the three cases on August 9, 2024, and the undersigned issued a formal order of consolidation on April 7, 2025.  The parties filed numerous summary-judgment motions on the various claims at issue.  The undersigned issued a report and recommendation on Defendant NewLeaf Homes' motions for summary judgment on Plaintiffs' breach-of-contract and FLSA claims, which also addressed Plaintiffs' motions for partial summary judgment on their breach-of-contract claims against NewLeaf.  (*See* R&R [#86].)  The District Court adopted the report and recommendation and denied the parties' motions.  (*See* Order [#89].)  Thereafter, the undersigned ordered consolidated briefing as to the remaining motions for summary judgment filed by Plaintiff Navarro and all three Defendants**.  This report and recommendation only addresses the parties' motions as to Plaintiffs' breach-of-contract and FLSA claims asserted against Defendants Ghavidel and Center Point**.

Plaintiff Navarro filed her ordered consolidated response in the '292 case [#91], to which Defendants filed a consolidated reply [#92].  Plaintiff Rhoder filed his ordered consolidated response in the '293 case [#58], to which Defendants filed a consolidated reply [#60].  Plaintiff

---

[1] Plaintiffs abandoned their previously-asserted claims for quantum meruit, promissory estoppel, unjust enrichment, fraud, money had and received, theft of services, willful filing of fraudulent tax forms in violation of 26 U.S.C. § 7434, and violation of the Texas Payday Law.  (*See* Advisory [#87].)

Brown filed his ordered consolidated response in the '477 case [#49], to which Defendants filed a consolidated reply [#50].

## II.  Summary Judgment Standard

Summary judgment is appropriate under Rule 56 of the Federal Rules of Civil Procedure only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *see also* Fed. R. Civ. P. 56(c).  A dispute is genuine only if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The party moving for summary judgment bears the initial burden of "informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp.*, 477 U.S. at 323.  Once the movant carries its burden, the burden shifts to the nonmoving party to establish the existence of a genuine issue for trial. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Wise v. E.I. Dupont de Nemours & Co.*, 58 F.3d 193, 195 (5th Cir. 1995). The non-movant must respond to the motion by setting forth particular facts indicating that there is a genuine issue for trial. *Miss. River Basin Alliance v. Westphal*, 230 F.3d 170, 174 (5th Cir. 2000). The parties may satisfy their respective burdens by tendering depositions, affidavits, and other competent evidence. *Topalian v. Ehrman*, 954 F.2d 1125, 1131 (5th Cir. 1992).  The Court will view the summary-judgment evidence in the light most favorable to the non-movant. *Rosado v. Deters*, 5 F.3d 119, 123 (5th Cir. 1993).  "After the non-movant

has been given the opportunity to raise a genuine factual issue, if no reasonable juror could find for the non-movant, summary judgment will be granted." *Westphal*, 230 F.3d at 174.

### III.  Summary Judgment Record

NewLeaf is a homebuilder, residential community builder, and land developer that constructs and sells new houses within its residential communities and subdivisions.  (Orig. Pet. [#1-2], at ¶ 19; Answer [#14], at ¶ 19.)  Fred Ghavidel is the owner, president, and manager of NewLeaf.  (Orig. Pet. [#1-2], at ¶ 93; Answer [#14], at ¶ 93.)  Center Point is a real estate company founded and managed by Ghavidel.  (New Leaf Dep. [#65-8], at 72:9–12.)  All three Plaintiffs worked as sales agents for NewLeaf for a period of years until March and April 2021, when they were laid off, along with two other sales agents who are not involved in this litigation. (Orig. Pet. [#1-2], at ¶ 21; Answer [#14], at ¶ 21; Rhoder Decl. [#53-17],[2] at ¶ 2; Brown Decl. [#44-17],[3] at ¶ 2.)  NewLeaf takes the position that Plaintiffs were laid off due to a downturn in the market from the COVID-19 pandemic, which required the company to perform a reduction in force.  (NewLeaf Dep. [#65-8], at 150:6–151:3.)  After Plaintiffs were laid off, they each received severance payments although they were not required to execute releases.  (Navarro Checks [#65-11], at 6–8; Rhoder Checks [#81-5], at 5–7; Brown Checks [#81-5], at 9–12.)

It is undisputed that there are a significant number of real estate transactions for which Plaintiffs never received commissions because the transaction closed after their termination. Defendants created and produced a spreadsheet in discovery, identifying "yellow" properties where each Plaintiff procured the buyer and executed the purchase agreement and the same buyer ultimately closed on the property.  (NewLeaf Spreadsheet Navarro [#79-16], at 1–9;

---

[2] This exhibit is found in the '293 case.
[3] This exhibit is found in the '477 case.

NewLeaf Spreadsheet Rhoder [#79-17], at 1–13; NewLeaf Spreadsheet Brown [#79-18], at 2–13; *see also* Rhoder Decl. [#53-17],[4] at ¶ 5; Rhoder List of Unpaid Commissions [#53-1],[5] at 1; Brown Decl. [#44-17],[6] at ¶ 6; Brown List of Unpaid Commissions [#44-1],[7] at 1; Navarro List of Unpaid Commissions [#74-1], at 1.)  Plaintiffs also assert that there are properties for which they were paid a commission, but the commission was underpaid.    (Rhoder Underpaid Commissions [#53-2],[8] at 1; Brown Underpaid Commissions [#44-18],[9] at 1–4; Navarro Underpaid Commissions [#74-2], at 1.)

The parties executed several agreements during their employment relationship.  All three Plaintiffs signed an Independent Contractor Agreement with NewLeaf in late 2016 or early 2017. (Navarro NewLeaf IC Agreement [#65-1], at 1–5; Rhoder NewLeaf IC Agreement [#81-2], at 7–11; Brown NewLeaf IC Agreement [#81-2], at 13–17.)  The NewLeaf Independent Contractor Agreement provides that as a salesperson for NewLeaf, Plaintiffs are employed to "sell, monitor and service each new home sale through closing" and that these responsibilities were to cover the assigned model homes in NewLeaf developments and subdivisions from 12 p.m. to 6 p.m. every day, for seven days a week.  (Navarro NewLeaf IC Agreement [#65-1], at 1; Rhoder NewLeaf IC Agreement [#81-2], at 7; Brown NewLeaf IC Agreement [#81-2], at 13.)[10]  In return, New Leaf agreed to pay Plaintiffs a commission based on the "base sales price" of the home: 2.75% if the purchaser did not have a representative agent and 1.25% if the purchaser did have an agent. (NewLeaf IC Agreement [#65-1], at 2.)  Plaintiffs did not receive any hourly wages for the work

---

[4] This exhibit is found in the '293 case.

[5] Id.

[6] This exhibit is found in the '477 case.

[7] Id.

[8] This exhibit is found in the '293 case.

[9] This exhibit is found in the '477 case.

[10] The agreements are identical.  The undersigned therefore only refers to Navarro's agreement throughout the remainder of this recommendation.

they performed or other compensation aside from their earned commissions.  (NewLeaf Dep. [#65-8], at 156:18–21.)

The Agreement set forth certain criteria that must be accomplished regarding each sale to entitle the sales agent to an earned commission:

(a) [T]he sale must be initiated by the Salesperson or salesperson's partner when working in multi-salesperson communities in which commissions are shared.

(b) A contract between NewLeaf and the purchaser(s) must be obtained, and the purchase agreement form must be ratified by an authorized officer of NewLeaf Homes.

(c) An earnest money deposit in an amount and form acceptable to NewLeaf Homes must be obtained at the time the purchase agreement is executed by the purchaser(s).

(d) The salesperson must conduct all required communications with the: purchaser(s), construction department, lender, realtor(s), NewLeaf Homes personnel, and any other applicable person and/or entity in an appropriate and effective manner so as to coordinate the efforts of all in accomplishing a timely and successful closing on the sale.

(e) The salesperson must assist in ensuring completion of all required contract documentation.

(f) The actions and conduct of the salesperson must be consistent with the policies and procedures of NewLeaf Homes.

(NewLeaf IC Agreement [#65-1], at 2.)  The Agreement reiterates that "if any of the foregoing criteria are not met, the sales commission will not be earned, and the Salesperson will receive no commission for sales which do not meet the foregoing criteria."  (*Id.* at 3.)  The Agreement further provides that "[t]he timing, frequency and manner of payment of such compensation shall be in accordance with the Company's regular payroll practices."  (*Id.*)  Commissions were always paid upon closing.  (NewLeaf Dep. [#65-8], at 125:11–14.)

The NewLeaf Agreement defines the parties' employment as "at will" and provides that Plaintiffs' employment "may be terminated by the Salesperson or NewLeaf Homes at any time, with or without cause." (NewLeaf IC Agreement [#65-1], at 1.) The Agreement also contains a clause entitled "Separation of Employment," which provides:

> If salesperson is terminated or leaves his or her relationship with NewLeaf Homes, the Company has the right to withhold all unpaid Commissions. Cause shall mean but not limited to: (a) any fact of fraud, intentional misrepresentation embezzlement or misappropriation or conversion of the assets or business opportunities of the Company, (b) conviction of the Employee of a felony, or (c) the Employee's willful refusal to substantially perform assigned duties.

(*Id.* at 3.) NewLeaf has not asserted that Plaintiffs were terminated for any of these three enumerated causes. All three Plaintiffs allege that Ghavidel breached the NewLeaf Independent Contractor Agreement by failing to pay them their earned commissions. (Navarro Orig. Pet. [#1-2], at 24–25; Rhoder Orig. Pet. [#1-2], at 31; Brown Orig. Pet. [#1-2], at 31.)

Navarro and Rhoder also signed an Independent Contractor Agreement with Center Point Realty in April 2017, a real estate company founded and managed by Ghavidel to bring sales activity "in house." (Ghavidel Dep. [#65-7], at 10:15–21, 29:3–9; NewLeaf Dep. [#65-8], at 52:21–25; Ghavidel Dep. [#65-9], at 50:3–10.) The Center Point Independent Contractor Agreement requires all licensed real estate agents working for NewLeaf to have their license with Center Point Realty. (Navarro Center Point IC Agreement [#65-2], at 1–2; Rhoder Center Point IC Agreement [#79-2], at 3–4.) Brown did not have a real estate license, and therefore did not sign an agreement with Center Point. (Brown Dep. [#65-4], at 43:16–44:16.)

As a broker with Center Point, Navarro and Rhoder could sell homes outside of NewLeaf developments and subdivisions. (Navarro Dep. [#65-5], at 7:25–13; NewLeaf Dep. [#65-8], at 73:4–76:18.) Plaintiffs' supervisor in both roles was Ghavidel, but the two companies were

separate and distinct entities. (Navarro Dep. [#65-5], at 7:25–13; NewLeaf Dep. [#65-8], at 52:21–53:2, 116:16–20.) According to Ghavidel, when there was a NewLeaf sale, NewLeaf would pay Center Point and then Center Point would distribute the funds, including commissions. (Ghavidel Dep. [#65-10], at 70:5–13.)

The Center Point Agreement entitles agents to receive 100% of the commissions on sales involving NewLeaf Homes buyers, minus a $199 transaction fee, and 80% of the commissions for sales not involving NewLeaf Homes buyers or outside of NewLeaf Homes, subject to certain listing limitations per calendar year. (Navarro Center Point IC Agreement [#65-2], at 1; Rhoder Center Point IC Agreement [#79-2], at 3.) Accordingly, the Agreement clarifies that for sales outside of NewLeaf developments, Navarro and Rhoder were entitled to a lesser percentage of earned commissions. The Center Point Agreement also contains a termination provision, which provides the following:

> If an agent is terminated or leaves his or her relationship with Center Point Realty. Company has the right to withhold all unpaid commission. It will be at the discretion of Center [P]oint on any outside listings at the time of his or her leaving.

(Navarro Center Point IC Agreement [#65-2], at 1; Rhoder Center Point IC Agreement [#79-2], at 3.) Navarro, but not the other two Plaintiffs, alleges that Center Point breached this agreement by underpaying commissions earned and paid prior to her termination. (Navarro Orig. Pet. [#1-2], at 25–26.)

## IV. Analysis

Defendant Ghavidel moves for summary judgment on all three Plaintiffs' breach-of-contract and FLSA claims. Plaintiff Navarro and Center Point have also filed cross motions for summary judgment on Navarro's breach-of-contract claim against Center Point. Ghavidel is entitled to summary judgment on Plaintiffs' contractual claim because Plaintiffs have failed to

raise a fact issue on their allegation that Ghavidel was the alter ego of NewLeaf and can be held individually liable for any breach of the NewLeaf Independent Contractor Agreement. Center Point is entitled to summary judgment on Navarro's contractual claim because the Center Point Independent Contractor Agreement unambiguously confers the right on Center Point to withhold unpaid commissions on outside sales, and Navarro has not established that the procuring-cause doctrine entitles her to the commissions earned but unpaid at the time of termination. Finally, Ghavidel is not entitled to summary judgment on Plaintiffs' claims arising under the FLSA because he has not established the application of the outside-sales exemption as a matter of law.

**A.      Ghavidel's Motions for Summary Judgment on Claims for Breach of Contract**

Ghavidel moves for summary judgment as to all three Plaintiffs' claims for breach of contract. The District Court should grant Ghavidel's motions.

The parties agree that Texas law governs Plaintiffs' breach-of-contract claims. To prevail on a breach-of-contract claim under Texas law, a party must establish the following elements: (1) a valid contract existed between the plaintiff and the defendant, (2) the plaintiff tendered performance or was excused from doing so, (3) the defendant breached the terms of the contract, and (4) the plaintiff sustained damages as a result of the defendant's breach. *West v. Triple B Servs., LLP*, 264 S.W.3d 440, 446 (Tex. App.—Houston [14th Dist.] 2008, no pet.).

It is undisputed that Ghavidel is the owner, president, and manager of NewLeaf, which is a limited liability company, and that he signed the NewLeaf Independent Contractor Agreement on behalf of NewLeaf as its president. (Orig. Pet. [#1-2], at ¶ 93; Answer [#14], at ¶ 93; NewLeaf IC Agreement [#65-1], at 5.) Plaintiffs seek to hold Ghavidel individually responsible for the alleged breach of the NewLeaf Agreement as the alter ego of NewLeaf.

The Court has already found that fact issues remain regarding whether Plaintiffs fully performed under the NewLeaf Agreement and whether NewLeaf's withholding of commissions from Plaintiffs after their termination constituted breach by NewLeaf. The question raised by Ghavidel's motion is whether Plaintiffs have raised a fact issue as to Ghavidel's alleged individual liability with respect to any breach of the NewLeaf Agreement found after a trial on the merits.

"A bedrock principle of corporate law is that an individual can incorporate a business and thereby normally shield himself from personal liability for the corporation's contractual obligations." *Willis v. Donnelly*, 199 S.W.3d 262, 271 (Tex. 2006). "The Texas Legislature has specifically set out when the corporate fiction may be disregarded and individual shareholders, or members in the case of a limited liability company, may be held liable for the corporation's contractual obligations." *U.S. KingKing, LLC v. Precision Energy Servs., Inc.*, 555 S.W.3d 200, 212 (Tex. App.—Houston [1st Dist.] 2018, no pet.) The Texas Business Organizations Code provides that an owner/member of a corporation "may not be held liable to the corporation or its obligees with respect to . . . any contractual obligation of the corporation" unless the owner/member "caused the corporation to be used for the purpose of perpetrating and did perpetrate an actual fraud . . . primarily for the direct personal benefit" of the owner/member. Tex. Bus. Orgs. Code § 21.223. These "principles applicable to piercing the corporate veil apply equally to limited liability companies." *U.S. KingKing*, 555 S.W.3d at 213 (citing *McCarthy v. Wani Venture, A.S.*, 251 S.W.3d 573, 590–91 (Tex. App.—Houston [1st Dist.] 2007, pet. denied); Tex. Bus. Orgs. Code § 101.002(a) (providing that section 21.223 applies to limited liability companies and their members)). Although "actual fraud" is not statutorily defined, courts have construed that term, for purposes of piercing the corporate veil, as "involv[ing]

11

dishonesty of purpose or intent to deceive." *Tryco Enters., Inc. v. Robinson*, 390 S.W.3d 497, 508 (Tex. App.—Houston [1st Dist.] 2012, pet. dism'd) (internal quotation omitted).

Ghavidel argues there is no evidence in the summary-judgment record from which a factfinder could conclude that he caused NewLeaf to be used for perpetuating an actual fraud on Plaintiffs for his direct personal benefit. As the non-movants, Plaintiffs are "required to identify specific evidence in the record, and to articulate the precise manner in which that evidence support[s] [their] claim[s]." *ContiCommodity Servs. Inc., v. Ragan*, 63 F.3d 438, 441 (5th Cir. 1995) (internal quotation omitted). In their responses to Ghavidel's motions for summary judgment, Plaintiffs do not address their breach-of-contract claim against Ghavidel or the fraud standard required to hold him individually liable for any breach of the Agreement by NewLeaf, despite the Court expressly ordering Plaintiffs to address these claims in their consolidated response. By failing to counter with specific evidence to show a genuine fact dispute exists regarding actual fraud, Plaintiffs have not met their burden to avoid summary judgment on Ghavidel's liability for breach of contract under the alter ego doctrine. Accordingly, the Court should grant Ghavidel's motions for summary judgment as to all three Plaintiffs' contractual claims.

**B.      Cross Motions for Summary Judgment on Navarro's Breach-of-Contract Claims against Center Point**

Navarro and Center Point have filed cross motions for summary judgment on Navarro's breach-of-contract claim. Navarro alleges that she fully performed all obligations under the Center Point Independent Contractor Agreement, and Center Point breached the agreement by failing to pay all earned commissions. (Orig. Pet. [#1-2], at ¶¶ 142–49.) Center Point in turn asserts that the governing agreement permitted it to withhold unpaid commissions.

The "primary concern when interpreting a contract is to ascertain and give effect to the intent of the parties as that intent is expressed in the contract." *Seagull Energy E & P, Inc. v. Eland Energy, Inc.*, 207 S.W.3d 342, 345 (Tex. 2006). "To discern this intent, [the court] examine[s] and consider[s] *the entire writing* in an effort to harmonize and give effect to all the provisions of the contract so that none will be rendered meaningless." *Id.* (internal quotation omitted) (emphasis in original).

The Court already rejected NewLeaf's argument that the NewLeaf Independent Contractor Agreement unambiguously permitted the withholding of commissions after Plaintiffs' termination regardless of the circumstances of their termination. But the NewLeaf and Center Point Agreements contain different termination provisions. The Center Point Agreement provides as follows:

> If an agent is terminated or leaves his or her relationship with Center Point Realty. Company has the right to withhold all unpaid commission. It will be at the discretion of Center [P]oint on any outside listings at the time of his or her leaving.

(Navarro Center Point IC Agreement [#65-2], at 1.) This unqualified conferral of discretion on Center Point to withhold "all unpaid commission" as to sales outside of NewLeaf subdivisions upon termination of an agent is unequivocal. In contrast, the NewLeaf Agreement's termination provision contains an additional provision regarding termination for cause:

> If salesperson is terminated or leaves his or her relationship with NewLeaf Homes, the Company has the right to withhold all unpaid Commissions. Cause shall mean but not limited to: (a) any fact of fraud, intentional misrepresentation embezzlement or misappropriation or conversion of the assets or business opportunities of the Company, (b) conviction of the Employee of a felony, or (c) the Employee's willful refusal to substantially perform assigned duties.

(*Id.* at 3.) In the previous report and recommendation on NewLeaf's motions for summary judgment, which was adopted by the District Court, the undersigned noted that Ghavidel, as the

13

owner and director of both NewLeaf and Center Point, could have used the same language in both agreements regarding the effect of termination on earned commissions but chose not to do so. Ultimately, the Court declined to read the for-cause clause out of the NewLeaf Agreement and found that the agreement could not be given a certain or definite meaning or interpretation, such that it could be construed as a matter of law. *See U.S. v. Fid. & Deposit Co.*, 10 F.3d 1150, 1152 (5th Cir. 1994). NewLeaf was therefore not entitled to summary judgment on the basis that it did not breach the contract by withholding commissions as a matter of law.

Again, no such ambiguity exists in the Center Point Agreement. "If, after the pertinent rules of construction are applied, the contract can be given a definite or certain legal meaning, it is unambiguous and [can be] construe[d] . . . as a matter of law." *Gemini Ins. Co. v. S & J Diving, Inc.*, 464 F. Supp. 2d 641, 647 (S.D. Tex. 2006) (internal quotation omitted). Navarro asks the Court to construe the Center Point Agreement as requiring the payment of all earned commissions remaining unpaid or not fully paid at the time of termination. There is no basis for this reading in the language of the Center Point Agreement, which provides the right to withhold unpaid commissions without qualification and at the complete discretion of Center Point. There is no other theory of breach alleged by Navarro in her pleadings, and her breach-of-contract claim therefore fails as a matter of law.

Moreover, consistent with the Court's prior ruling, Navarro has not established that the procuring-cause doctrine entitles her to those commission she alleges she earned on outside sales prior to her termination and is owed from Center Point. Texas recognizes the "procuring-cause doctrine," which imposes a default rule crediting a broker or salesperson "for a commission-generating sale" when a purchaser is produced through the broker's efforts, "ready, able and willing to buy the property upon the contract terms." *Perthuis v. Baylor Miraca Genetics*

14

*Lab'ys, LLC*, 645 S.W.3d 228, 234 (Tex. 2022) (internal quotation omitted). "Under this doctrine, the broker's entitlement to a commission vests on his having *procured* the sale, not on his actual involvement in a sale's execution or continued employment through the final consummation of the sale." *Id.* at 234–35 (emphasis in original). The doctrine, however, "provides nothing more than a default, which applies only when a valid agreement to pay a commission does not address questions like how a commission is realized or whether the right to a commission extends to sales closed after the brokerage relationship ends." *Id.* at 234.

The Center Point Agreement, like the NewLeaf Agreement, includes a specific contractual provision addressing the effect of separation of employment on the payment of commissions. There is no ambiguity as to the parties' intent to depart from and displace the default procuring-clause doctrine by including these additional contractual terms. *Catalyst Strategic Advisors, L.L.C. v. Three Diamond Cap. Sbc, L.L.C.*, 93 F.4th 870, 876 (5th Cir. 2024). The default procuring-cause doctrine therefore default rule does not entitle Navarro to the challenged commissions under the Center Point Agreement either. Navarro is therefore not entitled to summary judgment on her breach-of-contract claim against Center Point based on the procuring-cause doctrine.

This recommendation does not foreclose Plaintiffs from pursuing their breach-of-contract claims against NewLeaf regarding unpaid commissions from NewLeaf sales, even if NewLeaf pays those commissions through Center Point. (*See* Ghavidel Dep. [#65-10], at 70:5–13.) By granting summary judgment to Center Point on Navarro's breach-of-contract claim, Navarro is foreclosed from pursuing her contractual claim against Center Point regarding commissions related to outside sales.

15

### C.     Ghavidel's Motions for Summary Judgment on FLSA Claims

Ghavidel also moves for summary judgment on Plaintiffs' claims under the FLSA.[11] Plaintiffs allege that NewLeaf and Ghavidel were their joint employers for purposes of the FLSA and they were unlawfully denied overtime compensation because they were misclassified as exempt under the FLSA's "outside sales" exemption.

The FLSA requires employers to pay their employees a minimum wage and overtime compensation.  29 U.S.C. §§ 206(a)(1), 207(a).  All three Plaintiffs allege that NewLeaf and Ghavidel violated the FLSA by failing to pay them the federally mandated minimum wage and overtime compensation for all hours worked over 40 in a given workweek.  (*See, e.g.*, Navarro Orig. Pet. [#1-2], at ¶¶ 202–216.)  The FLSA applies only to covered employees, not to independent contractors.  *Flores v. FS Blinds, L.L.C.*, 73 F.4th 356, 362 (5th Cir. 2023) (citing 29 U.S.C. § 207).  Additionally, Congress has recognized "that a minimum wage and overtime pay would be impractical or inappropriate for some jobs."  *E.M.D. Sales, Inc. v. Carrera*, 604 U.S. 45, 48 (2025).  Therefore, the FLSA exempts many categories of employees from the FLSA's overtime-pay requirement.  *Id.*  One such exemption is the outside-salesperson exemption.  29 U.S.C. § 213(a)(1).  Ghavidel's responsive pleadings assert that Plaintiffs were never its employees but rather commissioned exempt outsides-sales agents.  (*See, e.g.*, Answer [#14], at ¶¶ 74–75.)

Ghavidel has moved for summary judgment on Plaintiffs' FLSA claims based on the outside-sales exemption. Ghavidel has not moved for summary judgment on the basis that he was not a joint employer or that Plaintiffs were independent contractors, not employees subject to the FLSA's mandate.  The undersigned therefore only considers herein the argument of

---

[11] Navarro, the only Plaintiff naming Center Point as a Defendant, has not asserted FLSA claims against Center Point.

Ghavidel in his motions—that even if Plaintiffs were employees, not independent contractors (and assuming Ghavidel is a joint employer), their FLSA claims fail because they are exempt under the outside-salesperson exemption.

The parties do not address Plaintiffs' FLSA claims against Ghavidel in their consolidated briefing filed after the District Court adopted the undersigned's previous report and recommendation on Plaintiffs' FLSA claims against NewLeaf. The parties have therefore not raised any basis for the Court to depart from the previous analysis of the outside-sales exemption resulting in the denial of NewLeaf's motions for summary judgment on Plaintiffs' FLSA claims against NewLeaf. (*See* R&R [#86], at 26–31; Order Adopting R&R [#89], at 12.) Because the reasoning articulated in the previous report and recommendation applies with equal force here, the District Court should deny Ghavidel's motions for summary judgment on Plaintiffs' FLSA claims and hold that Ghavidel has failed to carry its burden to show that the affirmative defense of the "outside sales" exemption is "plainly and unmistakenly" applicable. *Meza v. Intelligent Mexican Mktg., Inc.*, 720 F.3d 577, 580–81 (5th Cir. 2013) (internal quotation omitted). A factfinder will decide at trial whether Plaintiffs were employees or independent contractors, whether Ghavidel was a joint employer, and whether the exemption applies.

### V.  Conclusion and Recommendation

Having considered the motions, consolidated responses, and consolidated replies, the summary-judgment record, and the governing law, the undersigned **RECOMMENDS** the following:

- Defendant Fred Ghavidel's Motions for Summary Judgment (Motion #62 in Civil Action No. 5:23-cv-00292-XR; Motion #48 in Civil Action No. 5:23-cv-00293-XR; and Motion #40 in Civil Action No. 5:23-cv-00477-XR) be **GRANTED** as to Plaintiffs' claims of breach of contract but **DENIED** as to Plaintiffs' claims under the FLSA.

- Defendant Center Point Realty's Motion for Summary Judgment (Motion #67 in Civil Action No. 5:23-cv-00292-XR) be **GRANTED** as to Plaintiff Maria Navarro's claim of breach of contract.

- Plaintiff Maria Navarro's Motion for Partial Summary Judgment (Motion #74 in Civil Action No. 5:23-cv-00292-XR) be **DENIED** as to her claim of breach of contract against Center Point Realty.

If the District Court adopts the undersigned's recommendation, the Clerk should terminate Maria Navarro's Motion for Partial Summary Judgment (Motion #74 in Civil Action No. 5:23-cv-00292-XR) because the motion is now resolved. Ghavidel's and Center Point's motions for summary judgment should remain pending for a separate report and recommendation on Plaintiffs' discrimination claims.

### VI.  Instructions for Service and Notice of Right to Object/Appeal

The United States District Clerk shall serve a copy of this report and recommendation on all parties by either (1) electronic transmittal to all parties represented by attorneys registered as a "filing user" with the clerk of court, or (2) by mailing a copy to those not registered by certified mail, return receipt requested. Written objections to this report and recommendation must be filed **within fourteen (14) days** after being served with a copy of same, unless this time period is modified by the district court. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). The party shall file the objections with the Clerk of Court and serve the objections on all other parties. A party filing objections must specifically identify those findings, conclusions or recommendations to which objections are being made and the basis for such objections; the district court need not consider frivolous, conclusive or general objections. A party's failure to file written objections to the proposed findings, conclusions and recommendations contained in this report shall bar the party from a *de novo* determination by the district court. *Thomas v. Arn*, 474 U.S. 140, 149–52 (1985); *Acuña v. Brown & Root, Inc.,* 200 F.3d 335, 340 (5th Cir. 2000). Additionally, failure to file

18

timely written objections to the proposed findings, conclusions and recommendations contained in this report and recommendation shall bar the aggrieved party, except upon grounds of plain error, from attacking on appeal the un-objected-to proposed factual findings and legal conclusions accepted by the district court. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1).

SIGNED this 12th day of March, 2026.

ELIZABETH S. ("BETSY") CHESTNEY
UNITED STATES MAGISTRATE JUDGE

19