IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| MARIA NAVARRO, *Plaintiff* | § § § § § § § § § § § | |
| -vs- | | SA-23-CV-00292-XR |
| | | *Consolidated with:* |
| NEWLEAF HOMES, LLC, CENTER POINT REALTY COMPANY, FRED GHAVIDEL, *Defendants* | | SA-23-CV-00293-XR SA-23-CV-00477-XR |

## ORDER ON REPORT AND RECOMMENDATION

On this date the Court considered United States Magistrate Judge Elizabeth S. Chestney's Report and Recommendations filed on March 12, 2026 (ECF No. 93) and March 23, 2026 (ECF No. 94), and the parties' objections thereto (ECF Nos. 96, 97). After careful consideration, the Court issues the following order.

## BACKGROUND

### I.        Factual Background[1]

Plaintiffs Maria Navarro, Howard Rhoder, and Donald Brown each filed a separate cause of action in state court against their former employer, Defendant NewLeaf Homes, LLC ("NewLeaf"), a builder and residential community developer, and its owner, Fred Ghavidel ("Ghavidel"). Navarro, Rhoder, and Brown filed separate actions in state court against Defendants, which were then removed based on federal question jurisdiction.[2] Navarro's suit also names a third Defendant, Center Point. All three Plaintiffs were sales agents assigned to sell, monitor, and service new homes in a NewLeaf community subdivision.

---

[1] The following facts are undisputed unless otherwise noted.

[2] Navarro, Rhoder, and Brown filed separate actions in state court against Defendants, which were then removed based on federal question jurisdiction. *See Navarro v. NewLeaf Homes, LLC et al.*, No. 5:23-cv-292-XR [hereinafter, the "*Navarro* Action"]; *Rhoder v. NewLeaf Homes, LLC et al.*, No. 5:23-cv-293-XR [hereinafter, the "*Rhoder* Action"]; *Brown v. NewLeaf Homes, LLC et al.*, No. 5:23-cv-477-XR [hereinafter, the "*Brown* Action"].

All three Plaintiffs worked as sales agents for NewLeaf for a period of years until March and April 2021, when they—and two non-party sales agents—were laid off. Plaintiffs received severance payments but were not required to execute releases.

Plaintiffs assert that NewLeaf (and the other Defendants) misclassified them as independent contractors, failed to pay them earned commissions in violation of their contract, and discriminated against them based on various protected characteristics.

It is undisputed that there are a significant number of real estate transactions for which Plaintiffs never received commissions because the transaction closed after their termination. Defendants created and produced a spreadsheet in discovery, identifying "yellow" properties for which each Plaintiff procured the buyer and executed the purchase agreement and the same buyer ultimately closed on the property. Plaintiffs further assert that there are properties for which they were paid a commission, but the commission was underpaid.

## A.   Plaintiffs' Agreements with NewLeaf

The parties executed several agreements during their employment relationship, and these agreements bear on whether NewLeaf lawfully withheld commissions from the Plaintiffs.

All three Plaintiffs signed an identical Independent Contractor Agreement ("NewLeaf ICA") with NewLeaf in late 2016 or early 2017. *See, e.g.*, ECF No. 65-1. The NewLeaf ICA provides that as a salesperson for NewLeaf, Plaintiffs are employed to "sell, monitor and service each new home sale through closing" and that these responsibilities were to cover the assigned model homes in NewLeaf developments and subdivisions from 12 p.m. to 6 p.m. every day, for seven days a week. In return, NewLeaf agreed to pay Plaintiffs a commission based on the "base sales price" of the home: 2.75% if the purchaser did not have a representative agent. Plaintiffs did

not receive any hourly wages for the work they performed or other compensation aside from their earned commissions.

The Agreement set forth certain criteria that must be accomplished regarding each sale to entitle the sales agent to an earned commission, to be paid upon closing in accordance with NewLeaf's regular payroll practices.[3] The NewLeaf ICA further provides that, while NewLeaf retained the right to change its policies for paying commissions at its sole discretion, "[s]uch amendments or modifications [would] be effective if set forth in writing, signed by the President of NewLeaf Homes, and distributed to Sales" and would not apply retroactively to a purchase contract signed by a buyer before the effective date of such a change. *See* ECF No. 65-1 at 3. Still, it appears that NewLeaf reduced the commission percentage at least twice during Plaintiffs' tenure—once to 2% by oral agreement and, again to 1%, just before Plaintiffs were terminated. Ghavidel acknowledged that he was unable to find any documentation of this change in writing. ECF No. 65-7, Ghavidel Dep. at 45:25–46:10, 157:14–20.

---

[3] The NewLeaf ICA sets forth the following criteria earning a commission on a sale:

> [T]he sale must be initiated by the Salesperson or salesperson's partner when working in multi-salesperson communities in which commissions are shared.
>
> A contract between NewLeaf and the purchaser(s) must be obtained and the purchase agreement form must be ratified by an authorized officer of NewLeaf Homes.
>
> An earnest money deposit in an amount and form acceptable to NewLeaf Homes must be obtained at the time the purchase agreement is executed by the purchaser(s).
>
> The salesperson must conduct all required communications with the: purchaser(s), construction department, lender, realtor(s), NewLeaf Homes personnel, and any other applicable person and/or entity in an appropriate and effective manner so as to coordinate the efforts of all in accomplishing a timely and successful closing on the sale.
>
> The salesperson must assist in ensuring completion of all required contract documentation.
>
> The actions and conduct of the salesperson must be consistent with the policies and procedures of NewLeaf Homes.

*See* ECF No. 65-1 at 2.

The NewLeaf ICA defines the parties' employment as "at will" and provides that Plaintiffs' employment "may be terminated by the Salesperson or NewLeaf Homes at any time, with or without cause." ECF No. 65-1 at 1. The Agreement also contains a clause entitled "Separation of Employment", which provides:

> If salesperson is terminated or leaves his or her relationship with NewLeaf Homes, the Company has the right to withhold all unpaid Commissions. Cause shall mean but not limited to: (a) any fact of fraud, intentional misrepresentation embezzlement or misappropriation or conversion of the assets or business opportunities of the Company, (b) conviction of the Employee of a felony, or (c) the Employee's willful refusal to substantially perform assigned duties.

*Id.* at 3.

NewLeaf has not asserted that Plaintiffs were terminated for any of these three enumerated causes. All three Plaintiffs allege that NewLeaf breached the Independent Contractor Agreement by failing to pay them their earned commissions under the governing contract.

### B.    Plaintiffs' Agreements with Center Point Realty

In April 2017, Navarro and Rhoder also signed an Independent Contractor Agreement with Center Point Realty, a real estate company founded and managed by Ghavidel to bring sales activity "in house."[4] *See* ECF No. 65-2 (the "Center Point ICA"). Although Center Point and NewLeaf were separate and distinct entities, Ghavidel supervised Navarro and Rhoder in both roles. As brokers with Center Point, Navarro and Rhoder could sell homes outside of NewLeaf developments and subdivisions, although they earned lower commissions on outside sales. Upon the sale of a NewLeaf home, NewLeaf paid Center Point, which then distributed the commissions.

---

[4] Brown did not sign the Center Point ICA because it required all licensed real estate agents working for NewLeaf to have their license with Center Point Realty, and Brown did not have a real estate license. *See* ECF No. 65-4, Brown Dep. at 43:16–44:16.

The Center Point ICA also contains a termination provision:

> If an agent is terminated or leaves his or her relationship with Center Point Realty. Company has the right to withhold all unpaid commission. It will be at the discretion of Center [P]oint on any outside listings at the time of his or her leaving.

ECF No. 65-2 at 1. Navarro alone alleges that Center Point breached this agreement by underpaying commissions earned and paid prior to her termination.

## C.      Plaintiffs' Termination in Spring 2021

Plaintiffs were laid off in March and April 2021, along with two other sales agents who are not involved in this litigation. It is undisputed that Navarro is Hispanic and of Mexican origin and Rhoder and Brown are Black/African American. When Plaintiffs were terminated, the only sales agents who kept their positions were three white women (Tina Nielson, Beverly Moretta, and Jeanine Turney) and one white man (Zale Fletcher).[5]

As to their unpaid commissions, Plaintiffs identify as a comparator Svetlana ("Lana") Marinin, a white agent who received her commissions upon separation of employment. ECF No. 62-10, Ghavidel Dep. at 84:17–85:16; ECF No. 84-16, Ghavidel Dep. at 133:9–134:8; Brown Action, ECF No. 42-7, Ghavidel Dep. at 86:11–12, 98:2–24. Further, there is evidence that other white agents, such as Nielson, received commissions without completing all the prerequisites under the NewLeaf ICA. ECF No. 84-14, Ghavidel Dep. at 179:21–180:7, 182:16–24, 183:16–24; ECF No. 84-15, Ghavidel Dep. at 188:22–189:1.

---

[5] Plaintiffs have not directed the Court to evidence confirming the race of all retained employees; however, Ghavidel's testimony on behalf of NewLeaf indicates that Defendants agree Nielson is white. ECF No. 84-13, NewLeaf Dep. at 155:6–25. Nor do Defendants dispute that Moretta and Fletcher are white. *See* ECF No. 93-1, Ghavidel Dep. at 94:1–5. On the other hand, Ghavidel testified that Turney is Hispanic. *Id.*

There is some dispute about the race of the two other agents who were terminated at around the same time—Jeff and Ron Belshaw, a father-son team who Navarro characterized as "Korean-ish" in her deposition. ECF No. 65-5, Navarro Dep. at 54:7–55:25. Yet Ghavidel described the Belshaws as "White, Anglo" in his testimony. ECF No. 84-13, NewLeaf Dep. at 154:10–24. And Brown testified that he was unsure of the Belshaws' ethnicity and posited that they might be German. Brown Dep. ECF No. 79-12, at 116:14–18.

At the time of their termination, Plaintiffs were not given any reason for their termination. Navarro was told by her supervisor that "[t]here's no friends" in business and was let go without notice. *Navarro* Action, ECF No. 79-7, Navarro Dep. at 48:1–7. Brown was told "a highschool [sic] student could do" his job. *Brown* Action, ECF No. 49-3 at 3. Rhoder was told he was being let go and that Defendants would create a superintendent position for him. *Id.*, ECF No. 65-6, Rhoder Dep. at 52:8–53:1.

After all three Plaintiffs filed EEOC charges, Defendants attributed the layoffs to economic conditions: Navarro and Brown were told it was the "unforeseen housing market," while Rhoder was told it was "changes in the business environment caused by the COVID-19 pandemic." *See Navarro* Action, ECF No. 91-4; *Brown* Action, ECF No. 49-2; *Rhoder* Action, ECF No. 58-2.

Plaintiffs dispute this explanation, pointing to (1) an April 2021 announcement on NewLeaf's website stating, "Due to Exceptionally High Demand, We Will Not Be Taking Contracts Until Late August–Early September 2021," (2) a San Antonio Board of Realtors ("SABOR") report reflecting "double digit year-over-year growth in the San Antonio real estate market during March and April 2021"—the precise months of Plaintiffs' terminations; and (3) evidence of NewLeaf's purportedly increased costs show price hikes in 2022—over a year after Plaintiffs' termination. ECF No. 91 at 11 n.3; *see* ECF No. 91-5 at 10 (showing a 27% increase in the sale of single-family homes and a 157% increase in the sale of residential lots and acreage from the previous year); Brown Action, ECF No. 49 at 8 n.3 (citing ECF No. 49-5).

After all three Plaintiffs filed suit, Ghavidel asserted in his deposition—for the first time—that Plaintiffs were terminated due to performance issues. Despite describing Navarro as a "great employee" and "great salesperson" in his deposition, Ghavidel also testified that she had issues with customers, not returning phone calls, required a lot of "hand holding," and was the target of

several customer complaints (at least one of which was communicated in writing and is in the record). ECF No. 65-8, NewLeaf Dep. at 149:13–24; ECF No. 92-1, Ghavidel Dep. at 75:24–76:5; ECF No. 92-1 at 1279 (email feedback). Ghavidel testified that Rhoder at times became "stagnant" with sales, requiring conversations about how to improve, ECF No. 92-1, Ghavidel Dep. at 80:3–10, and that Brown was not very "computer savvy," completed all contracts by hand, and had not obtained his realtor's license, *id.* at 160:13–161:6. Ghavidel conceded, however, that there were never any written complaints regarding Plaintiffs' work performance, noting they were not that formal as a company. *Id.* at 153:25–154:8, 196:15–21.

## II.   Procedural History

Plaintiffs filed separate actions, each asserting claims for breach of contract, violations of the Fair Labor Standards Act ("FLSA"), and discrimination under 42 U.S.C. § 1981, Title VII of the Civil Rights Act of 1964 ("Title VII"), and the Texas Labor Code.[6] This Court consolidated the cases in August 2024, and referred the consolidated cases to the Magistrate Judge for all pretrial matters pursuant to Local Rule CV-72 and Appendix C. ECF No. 73.

Following consolidation, the parties filed ten cross-motions for summary judgment.[7] In September 2025, the Court adopted the Magistrate Judge's first recommendation to deny the parties' cross-motions for summary judgment as to the breach-of-contract and FLSA claims against NewLeaf. *See* ECF No. 89. In particular, the Court found (1) an ambiguity as to whether Plaintiffs were owed commission payments under the NewLeaf ICA's "Separation of

---

[6] Plaintiffs have abandoned claims for quantum meruit, promissory estoppel, unjust enrichment, fraud, money had and received, theft of services, willful filing of fraudulent tax forms, and violation of the Texas Payday Law. ECF No. 87.
[7] At a status conference in April 2025, the Magistrate Judge announced that she would take up the motions bearing on Plaintiffs' claims against NewLeaf (other than their claims of discrimination). Based on this phased approach, Defendants filed a consolidated response (ECF No. 79) to Plaintiffs' motions for partial summary judgment, and Plaintiffs filed a consolidated reply (ECF No. 82). Plaintiffs likewise filed their consolidated response to NewLeaf's three motions (ECF No. 80), and NewLeaf filed a consolidated reply (ECF No. 81).

Employment" provision, and (2) a genuine fact dispute as to whether Plaintiffs were subject to the "outside sales exemption" to the FLSA. *See id.* at 11–12.

The Court now considers the Magistrate Judge's recommendations as to the remaining motions, issued in two phases: (1) the "Compensation R&R" (ECF No. 93), addressing the breach-of-contract and FLSA claims against Ghavidel and Center Point, and (2) the "Discrimination R&R" (ECF No. 94), addressing Plaintiffs' claims for employment discrimination.

## LEGAL STANDARD

A party may serve and file objections to a Report and Recommendation within fourteen days. FED. R. CIV. P. 72(a), (b)(2). "Parties filing objections must specifically identify those findings objected to. Frivolous, conclusive or general objections need not be considered by the district court." *Nettles v. Wainwright*, 677 F.2d 404, 410 n.8 (5th Cir. 1982), *overruled on other grounds by Douglass v. United States Auto. Ass'n*, 79 F.3d 1415 (5th Cir. 1996).

Courts must review *de novo* any of the Magistrate Judge's conclusions to which a party has specifically objected. *See* 28 U.S.C. § 636(b)(1) ("A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made."). Any sections that were not clearly objected to are reviewed for clear error to determine whether they are contrary to law. *Id.*; *see also United States v. Wilson*, 864 F.2d 1219, 1221 (5th Cir. 1989), *cert. denied*, 492 U.S. 918 (1989).

## DISCUSSION

**I.     Compensation R&R (ECF No. 93)**

### A.      Summary of Recommendations

On March 13, 2026, the Magistrate Judge addressed five motions for summary judgment,[8] recommending that the Court (1) grant Ghavidel's motions as to Plaintiffs' breach-of-contract claims, (2) deny his motions as to Plaintiff's FLSA claims, and (3) grant Center Point's motion for summary judgment on Navarro's breach-of-contract claim.

First, as to Plaintiffs' breach-of-contract claims against Ghavidel, the Magistrate Judge found no evidence that he should be held personally liable for violations of the NewLeaf ICA under an alter-ego/veil-piercing theory. ECF No. 93 at 10–12.

As to Plaintiffs' FLSA claims, however, the Magistrate Judge rejected Ghavidel's argument that Plaintiffs were properly classified as outside-sales agents, based on the Court's September 2025 order denying NewLeaf's motion for summary judgment on the same basis.[9] *See id.* at 16; ECF No. 89 at 12. Because Ghavidel did not proffer any reason to depart from that analysis in his motion, the Magistrate Judge concluded that Ghavidel, likewise, had not carried his burden of showing that the exemption "plainly and unmistakenly" applied. *Meza v. Intelligent Mexican Mktg., Inc.*, 720 F.3d 577, 580–81 (5th Cir. 2013)).

Finally, the Magistrate Judge concluded that Navarro's breach-of-contract claim against Center Point failed because, unlike the NewLeaf ICA—in which a termination-for-cause clause created ambiguity about NewLeaf's right to withhold commissions, *see* ECF No. 89 at 11—the Center Point ICA clearly gives Center Point discretion to withhold all unpaid outside-sale

---

[8] *Navarro* Action, ECF Nos. 62, 67, 74; *Rhoder* Action, ECF No. 48; *Brown* Action, ECF No. 40.
[9] Ghavidel did not challenge his joint-employer status or assert that Plaintiffs were subject to the independent-contractor exemption to the FLSA's protections.

9

commissions upon separation, at Center Point's discretion. ECF No. 93 at 12–15 (citing ECF No. 65-2 at 1). Nonetheless, the Magistrate Judge clarified that dismissing Navarro's breach-of-contract claim against Center Point would not foreclose Plaintiffs from pursuing claims for unpaid commissions against NewLeaf, even if NewLeaf pays commissions through Center Point.

### B.     Analysis

Plaintiffs did not object to the Compensation R&R. Defendants filed untimely objections on March 31, 2026—four days after the deadline. ECF No. 96. Although Defendants purport to object to both R&Rs, *see id.* at 1 n.1, their objections all bear on Plaintiffs' FLSA claims, with no reference to the discrimination claims addressed in the later R&R, *see generally id.*

Moreover, as Plaintiffs correctly observe, some of Defendants' purported objections to the Compensation R&R attempt to revive arguments that have already been foreclosed by previous Court orders. *See* ECF No. 98. Their objections, for example, insist that NewLeaf and Ghavidel are not joint employers and that Plaintiffs were independent contractors, *see* ECF No. 96 at 3–6, and seek to relitigate the interpretation of the termination clause in the NewLeaf ICA, *id.* at 7–11. But Ghavidel did not argue that he was entitled to summary judgment on Plaintiffs' FLSA claims based on Defendants' joint-employer status or Plaintiffs' independent-contractor status. *See* ECF No. 93 at 16. And, given that Ghavidel cannot be held personally liable under the NewLeaf ICA, he has no standing to object to the Court's construction of the termination clause.

Defendants' objections are overruled as untimely and otherwise meritless. The Court has reviewed the Compensation R&R and finds it to be neither clearly erroneous nor contrary to law and, accordingly, adopts the Magistrate Judge's recommendations in full. *Wilson*, 864 F.2d at 1221.

## II.    Discrimination R&R (ECF No. 94)

### A.    Summary of Recommendations

Despite identifying material fact issues as to whether Plaintiffs were employees or independent contractors, the Magistrate Judge recommended that the Court grant Defendants' motions for summary judgment on all employment-discrimination claims because (1) Plaintiff abandoned certain claims, (2) neither Title VII nor the Texas Labor Code provide for individual liability, and (3) there was no evidence that the reasons proffered for Plaintiffs' termination were pretext for discrimination on the basis of race or national origin.

#### 1.    Abandoned Claims

The Magistrate Judge concluded that, by failing to respond to Defendants' motions for summary judgment, Plaintiffs abandoned their hostile-work-environment claims under Title VII, the ADEA, Section 1981, and the Texas Labor Code. ECF No. 94 at 9–10. For the same reason, she found that Brown had abandoned his ADEA claim and that Rhoder and Brown had abandoned their sex-discrimination claims. *Id.* at 11.

#### 2.    Individual Liability

The Magistrate Judge recommended that the Court grant summary judgment on Plaintiffs' employment discrimination claims against Ghavidel because there is no individual liability for race discrimination under Title VII or the Texas Labor Code. *Id.* at 12 (citing *Indest v. Freeman Decorating, Inc.*, 164 F.3d 258, 262 (5th Cir. 1999) and *City of Austin v. Gifford*, 824 S.W.2d 735, 742 (Tex. 1992)). She noted, however, that Ghavidel did not seek summary judgment on this basis as to Plaintiffs' Section 1981 claims. Individual liability is available under Section 1981 where the individual is a supervisor personally involved in the discriminatory activity and is "essentially the same" as the employer in exercising authority over the plaintiff. *Foley v. Univ. of Hous. Sys.*, 355 F.3d 333, 337 (5th Cir. 2003).

11

### 3.      Race/National Origin Discrimination Claims

The Magistrate Judge found that Plaintiffs established a prima facie case of race/national origin discrimination as to the withheld commissions. While the terminations presented a "closer call," the Magistrate Judge concluded that any doubts about the prima facie case were immaterial because Plaintiffs had not established sufficient evidence of pretext. ECF No. 94 at 19–21.

"Pretext can be proven by any evidence that casts doubt on the credence of the employer's proffered justification for the adverse employment action." *Harris v. FedEx Corp. Servs., Inc.*, 92 F.4th 286, 297 (5th Cir. 2024) (quotation omitted). "An explanation is false or unworthy of credence if it is not the real reason for the adverse employment action." *Laxton v. Gap Inc.*, 333 F.3d 572, 578 (5th Cir. 2003). "If the trier of fact does not believe the employer to have given a truthful account of its decision, it is reasonable to infer that the most likely explanation is the one the employer cannot admit—that it acted for . . . discriminatory reasons." *Ameristar Airways, Inc. v. Admin. Rev. Brd.*, 650 F.3d 562, 569–70 (5th Cir. 2011). Thus, "a plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated." *Id.* at 570 (quoting *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 148 (2000)). Similarly, when an employer's statements have "not remained the same" over the course of a dispute, a jury can infer that the stated reason for the adverse action is pretextual. *Nasti v. CIBA Specialty Chem. Corp.*, 492 F.3d 589, 594 (5th Cir. 2007).

The Magistrate Judge found that NewLeaf had provided a legitimate, non-discriminatory reason for the terminations—a change in the market post COVID-19—and that Plaintiffs' various performance issues justified their selection for termination once Defendants decided to downsize their sales force. *Id.* at 21 (citing ECF No. 65-8, NewLeaf Dep. at 149:13–24, 150:6–19); *see Price*

*v. Fed. Exp. Corp.*, 283 F.3d 715, 720 (5th Cir. 2002) ("The defendant's burden during th[e] second step is satisfied by producing evidence, which, taken as true, would permit the conclusion that there was a nondiscriminatory reason for the adverse action."); *McCoy v. City of Shreveport*, 492 F.3d 551, 559 (5th Cir. 2007) ("The employer's burden is one of production, not persuasion, and does not involve a credibility assessment."). Further, Defendants produced a non-discriminatory reason for withholding commissions: other agents requested payment of a specific commission and the exception was granted. *Brown* Action, ECF No. 42-7, Ghavidel Dep. at 98:25–99:14.

Thus, the burden returned to Plaintiffs to prove that Defendants' justifications were pretextual or that their race/national origin was one of the reasons for New Leaf's decision to terminate them and withhold commissions. *Rachid v. Jack in the Box, Inc.*, 376 F.3d 305, 312 (5th Cir.2004) (alteration in original). Under the pretext alternative, the plaintiff "bears the ultimate burden of proving that the employer's proffered reason is not true but instead is a pretext for the real discriminatory . . . purpose. To carry this burden, the plaintiff must rebut each nondiscriminatory . . . reason articulated by the employer." *McCoy*, 492 F.3d at 557. Under the mixed-motive alternative, if the plaintiff shows that the plaintiff's protected characteristic was a motivating factor, then the burden shifts to the employer to show that the adverse employment decision would have been made regardless of the characteristic. *See Rachid*, 376 F.3d at 312.

The Magistrate Judge found insufficient evidence that Defendants' housing-market justification was pretextual, stating, "There is no evidence of the website itself in the record, only a statement about it by Plaintiffs themselves in their EEOC filing." *Id.* at 22. She further found that performance issues (customer complaints about Navarro, Rhoder's stagnant sales, and Brown's lack of real estate license and computer skills) were supported by record evidence. *Id.* at 23.

13

The Magistrate Judge further rejected Plaintiffs' argument that the shifting explanations for their termination was evidence of pretext, reasoning that "the record establishes only that no reason was provided to Plaintiffs when they were terminated—not that a particular reason was provided that was later contradicted by Defendants." ECF No. 94 at 23–24.

### B.     Analysis

Although Defendants purported to file objections to the Discrimination R&R, *see* ECF No. 96 at 1 n.1, none of their objections address the Magistrate Judge's recommendations as to Plaintiff's claims for employment discrimination, *see generally id.*

Plaintiffs filed a timely objection, but only to the Magistrate Judge's recommendation that the Court dismiss their disparate-treatment claims based on race. *See* ECF No. 97.

Thus, neither party has objected to the Magistrate Judge's recommendations to dismiss Plaintiffs' claims for hostile work environment, age discrimination, and sex discrimination, and discrimination claims against Ghavidel individually. The Court has reviewed those recommendations and, finding them to be neither clearly erroneous nor contrary to law, adopts them in full. *Wilson*, 864 F.2d at 1221.

As to their race-discrimination claims, Plaintiffs object that the Magistrate Judge overlooked material evidence of pretext, including several exhibits contradicting the "economic-downturn" explanation for their termination. Specifically, Plaintiffs point to three separate filings of a screen capture of the NewLeaf Homes website from April 2021 (drawn from the Wayback Machine archive) attached to EEOC filings submitted by each Plaintiff. *See Navarro* Action, ECF No. 91-5 at 7; *Rhoder* Action, ECF No. 58-3 at 6; *Brown* Action, ECF No. 49-3 at 8. While the screenshot attached to Navarro's EEOC filing is illegible because it is too small, the images attached to Rhoder and Brown's filings clearly display NewLeaf's public-facing homepage banner

stating: "Due to Exceptionally High Demand, We Will Not Be Taking Contracts Until Late August—early September 2021." *See id.* Thus, the Magistrate Judge's finding that "there is no evidence of the website itself in the record, only a statement about it by Plaintiffs themselves in their EEOC filing," ECF No. 94 at 22, is erroneous.

Plaintiffs contend this error "is not harmless" because the Magistrate Judge's pretext analysis "turned directly on whether Plaintiffs had produced evidence—beyond their own EEOC statements—that Defendants' housing-market justification was false." ECF No. 97 at 4; *see also* id. at 4–5 (noting that the statement on NewLeaf's website was corroborated by the SABOR report reflecting double digit year-over-year growth in the San Antonio real estate market in March and April 2021, *see* ECF No. 91-5 at 2, and Defendants' own records showing material cost increases in 2022, *see* ECF No. 49-5). Plaintiffs assert these "direct contradiction[s]" are "precisely the kind of evidence that supports a finding that the stated reason is false or unworthy of credence" and that "[d]etermining whether to credit that contradiction is the jury's function, not the Court's on summary judgment." ECF No. 97 at 4.

To be sure, if Defendants had limited their justification to *existing* sales in the San Antonio real estate market in spring 2021, the record would likely establish a genuine dispute of material fact as to whether Defendants' explanation for the terminations was pretextual. But, as Defendants explained in their response to Rhoder's EEOC charge, the "changes in the business environment caused by the COVID-19 pandemic" included a "*decline in closing and forecasting trends for 2022*, resulting in the decision to reduce the sales team." ECF No. 58-2 at 2 (emphasis added).

In other words, Defendants' decision was based on an *expected* downturn in business resulting from the COVID-19 pandemic. Indeed, the statement on NewLeaf's website pausing new contracts until Fall 2021 is consistent with Defendants' decision to reduce NewLeaf's sales force,

15

especially in light of its business model. As Ghavidel explained, NewLeaf had a backlog of contracts for future builds. ECF No. 79-2, Ghavidel Dep. at 47:2–18. But due to the pandemic, NewLeaf found that it "couldn't deliver houses anymore because of lack of material or pricing volatility of materials," and "what . . . used to take New Leaf six to eight months to build a house was taking . . . over a year and a half to build a house." *Id.* at 190:21–191:2. In other words, the website capture and evidence of cost increases in 2022 *corroborate* Defendants' explanation:

> The company laid off five salespersons because it was then holding a large inventory of unsold constructed, or partially constructed, homes in its subdivisions that were causing it financial strain. It simply didn't need the number of salespeople it currently employed. . . . [T]his was a company-wide scale-down, and people of all races were either let go or had their hours reduced mainly due to complications caused by the mid-COVID financial stance the business was in, including a large inventory of previous contracts that fell through because of the failure of customer financing, construction delays caused by severe supply-chain issues, and other legitimate business factors.

ECF No. 65 at 9–10.

Still, Plaintiffs insist that the Magistrate Judge erred by rejecting their argument that a reasonable factfinder could infer pretext from NewLeaf's shifting-explanations for their terminations. ECF No. 97 at 5–6. It is true that when an employer's statements have "not remained the same" over the course of a dispute, a jury can infer that the stated reason for the adverse action is pretextual. It is true that "[a] court may infer pretext where a defendant has provided inconsistent or conflicting explanations for its conduct." *Nasti*, 492 F.3d at 594; *Caldwell v. KHOU-TV*, 850 F.3d 237, 242 (5th Cir. 2017).

But Plaintiffs have not rebutted Defendants' performance-based explanation for their terminations—aside from a few generically complimentary statements about their work—or proffered any evidence that one of the white comparators who retained their positions exhibited

16

similar performance issues. *McCoy*, 492 F.3d at 557 ("the plaintiff must rebut *each* nondiscriminatory . . . reason articulated by the employer") (emphasis added).

Here, the Fifth Circuit's analysis of an employer's shifting explanations for its decision to promote another employee over the plaintiff in *Burrell v. Dr. Pepper/Seven Up Bottling Group, Inc.* is instructive. 482 F.3d 408 (5th Cir. 2007). Before the EEOC, the employer stated that the plaintiff lacked "purchasing experience." *Id.* at 413. But before the district court, the employer stated that the plaintiff lacked "bottling experience." *Id.* And before the Fifth Circuit, the employer stated that that the plaintiff lacked "purchasing experience in the bottling industry." *Id.* The Fifth Circuit found a genuine issue of fact as to pretext based on what, at first blush, appear to be very minor, nuanced differences between the employer's explanations. The key to the panel's reasoning, however, was that the panel evaluated the employer's evolving explanations in light of the plaintiff's comparator evidence: "[the promoted employee]'s own resume and deposition testimony indicates that he lacked significant purchasing experience in the bottling industry." *Id.*; *see also id.* at 414 (describing ways in which the plaintiff was better qualified for the promotion than his comparator).

The Fifth Circuit's approach is consistent with the standard set by the Supreme Court: "a plaintiff's prima facie case, ***combined with*** sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated." *Reeves*, 530 U.S. at 148 (emphasis added). Put differently, NewLeaf's shifting explanations for the terminations do not create an inference of discrimination because Plaintiffs' prima facie case failed at the final step: demonstrating that they were treated less favorably than similarly-situated white employees. *McDonnell Douglas*, 411 U.S. 792; *see Lee v. Kan. City S. Ry. Co.*, 574 F.3d 253, 260 (5th Cir. 2009) ("[A]n employee who proffers a fellow employee as a

17

comparator [must] demonstrate that the employment actions at issue were taken 'under nearly identical circumstances.'").

In short, the Court agrees with the Magistrate Judge's conclusion that "Defendants' testimony that they selected those agents with performance issues for termination is easily harmonized with their assertion that those terminations were necessitated by adverse economic circumstances." ECF No. 94 at 24. Plaintiffs' objections are overruled, and their claims for employment discrimination fail as a matter of law.

## CONCLUSION

For the foregoing reasons, the Court **ADOPTS** the Magistrate Judge's Compensation R&R (ECF No. 93) and Discrimination R&R (ECF No. 94) and issues the following orders in the cases identified below.

### *Navarro v. NewLeaf et al.*, No. 5:23-CV-292-XR

1.   Ghavidel's motion for summary judgment (ECF No. 62) is **GRANTED IN PART** and **DENIED IN PART.** The motion is denied as to Navarro's FLSA claim and otherwise granted in all respects.

2.   NewLeaf's motion for summary judgment (ECF No. 65) is **GRANTED IN PART** and **DENIED IN PART.** The motion is granted as to Navarro's claims for employment discrimination and otherwise denied in all respects.

3.   Center Point's motion for summary judgment (ECF No. 67) is **GRANTED**.

4.   Navarro's motion for partial summary judgment (ECF No. 74) is **DENIED**.

### *Rhoder v. NewLeaf et al.*, No. 5:23-CV-293-XR

1.   Ghavidel's motion for summary judgment (ECF No. 48) is **GRANTED IN PART** and **DENIED IN PART.** The motion is denied as to Rhoder's claims for employment discrimination and otherwise denied in all respects.

2.   NewLeaf's motion for summary judgment (ECF No. 51) is **GRANTED IN PART** and **DENIED IN PART.** The motion is granted as to Rhoder's claims for employment discrimination and otherwise denied in all respects.

***Brown v. NewLeaf et al.*, No. 5:23-CV-477-XR**

1.      Ghavidel's motion for summary judgment (ECF No. 40) is **GRANTED IN PART** and **DENIED IN PART.** The motion is denied as to Brown's FLSA claim and otherwise granted in all respects.

2.      NewLeaf's motion for summary judgment (ECF No. 42) is **GRANTED IN PART** and **DENIED IN PART.** The motion is granted as to Brown's claims for employment discrimination and otherwise denied in all respects.

### Summary of Remaining Claims

Plaintiffs' breach-of-contract claims against NewLeaf and their FLSA claims against NewLeaf and Ghavidel remain pending.

All other claims identified in the operative complaints have either been abandoned or **DISMISSED WITH PREJUDICE** pursuant to this Order and the Court's order dated September 23, 2025 (ECF No. 89).

It is so **ORDERED**.

**SIGNED** this 4th day of June, 2026.

_____

XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE

19